UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ANTHONY TALAVERA | ) | |
| | ) | Case No. 1:20-cv-00855 |
| Plaintiff, | ) | |
| | ) | Judge |
| vs. | ) | |
| | ) | Magistrate Judge |
| OFFICER DOMINIC MEROLA, Star No. 7221; | ) | |
| OFFICER MARTIN J. BOYLE, Star No. 14500; | ) | |
| OFFICER MATTHEW M. ZEIGER, Star No. 18559; and | ) | |
| CITY OF CHICAGO | ) | |
| | ) | Trial By Jury Demanded |
| Defendants. | ) | |

## COMPLAINT AT LAW

NOW COMES the Plaintiff, Mr. Anthony Talavera, by and through his attorney, Mr. David S. Lipschultz, and in support of his Complaint at Law against the Defendants, Officer Dominic Merola, Star No. 7221; Officer Martin J. Boyle, Star No. 14500; Officer Matthew M. Zeiger, Star No. 18559; and City of Chicago, states as follows:

### JURISDICTION AND VENUE

1. This action is brought pursuant to the United States Constitution, 42 U.S.C. §1983 and §1988 (the Civil Rights Act of 1871), and the laws of the State of Illinois to redress deprivations of the civil rights of the Plaintiff, accomplished by acts and/or omissions of the Defendants and committed under color of law.

2. This Court has jurisdiction under and by virtue of 28 U.S.C. §1343, §1331 and §1367.

3. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391, as the acts complained of took place in this judicial district.

1

## PARTIES

4.  Plaintiff Anthony Talavera ("Mr. Talavera"), is a resident of the City of Chicago, County of Cook, State of Illinois.

5.  At all relevant times herein referenced, Defendant Officer Dominic Merola, Star No. 7221 ("Officer Merola"), was employed by the City of Chicago as a sworn police officer. He is sued in his individual capacity. At the time of the incidents at issue in this Complaint, Officer Merola was engaged in the conduct complained of while acting within the scope of his employment and under color of law.

6.  At all relevant times herein referenced, Defendant Officer Martin J, Boyle, Star No. 14500 ("Officer Boyle"), was employed by the City of Chicago as a sworn police officer. He is sued in his individual capacity. At the time of the incidents at issue in this Complaint, Officer Boyle was engaged in the conduct complained of while acting within the scope of his employment and under color of law.

7.  At all relevant times herein referenced, Defendant Officer Matthew M. Zeiger, Star No. 18559 ("Officer Zeiger"), was employed by the City of Chicago as a sworn police officer. He is sued in his individual capacity. At the time of the incidents at issue in this Complaint, Officer Zeiger was engaged in the conduct complained of while acting within the scope of his employment and under color of law.

8.  At all relevant times herein referenced, Defendant, City of Chicago, was and remains a governmental entity formed pursuant to the laws of the State of Illinois. Officer Merola, Officer Boyle and Officer Zeiger ("Defendant Officers") were employed by City of Chicago as sworn police officers, and at the time of the incident at issue were acting within the scope of their employment for City of Chicago and under color of law.

9. The City of Chicago is also the entity and actor which, as the moving force violating Plaintiff's constitutional rights, by designing and implementing the policies, practices and customs complained of in this Complaint at Law.

## INTRODUCTION

10. Officers Merola, Boyle and Zeiger falsely arrested Mr. Talavera on February 11, 2018. They did so to cover up for Officer Merola's rageful beating of an innocent Mr. Talavera over a parking space during a winter snowstorm.

11. The misconduct of Officers Merola, Boyle and Zeiger towards Mr. Talavera illustrates two troubling police practices which, for years, have brought disgrace to the honest and professional officers of the Chicago Police Department:

    a. First, Defendant City of Chicago failed to monitor closely officers whose prior conduct reveals a propensity towards police misconduct. Officer Merola has been subject of many civilian complaints to the Chicago Police Department, and is known for an uneven and unpredictable temperament. Yet the City failed to prevent him for predictably harming others, including Mr. Talavera and the civilians who filed complaints against him over the years.

    b. Second, Defendant City of Chicago has been unwilling to end the enduring code of silence within the department that immediately protects an officer who commits wrongdoing against innocent people. This code of silence involves cover-ups: here, Officer Boyle and Officer Zeiger adopted Officer Merola's version of the incident and advanced false statements to protect Officer Merola. Officers Boyle and Zeiger joined with Officer Merola to hide the truth and to present a false yet consistent narrative for the prosecution of Mr. Talavera.

12. Sadly, this entire violation of Mr. Talavera's constitutional rights began over Officer Merola's rage over Chicago's harmless and innocent tradition of residents claiming "dibs" on parking spaces during heavy snowstorms.

## FACTS

<u>Dibs on Snow Parking</u>

13. The incident among the parties began over the winter tradition known as "dibs."

14. Dibs describes the act of a resident spending hours of time and hard work shoveling his car out of a snow-covered parking space on the street in front of his residence. The resident then "puts dibs" and "claims" that that parking space by placing chairs or other objects in the space to prevent others from parking there.

15. Advocates of dibs assert that this resident is entitled to the parking space until the snow has melted or has been removed.

16. Residents of Chicago claim dibs every winter across the city.

17. In Mr. Talavera's neighborhood, which includes Officer Merola's relative, dibs enjoys popular support of everyone on the block. People there help each other claim dibs.

<u>The Incident</u>

18. Plaintiff complains about an incident involving the Defendants which took place on February 11, 2018, at approximately 6:30 p.m., on the 11000 block of South Avenue L, in Chicago, Illinois.

19. Mr. Talavera and Officer Merola have seen each other regularly in the neighborhood for several years before the incident. They were not friends and they were not acquaintances. But they knew each other by face and name.

4

20. Like everyone on the block, Mr. Talavera knew Officer Merola was a Chicago police officer.

21. Mr. Talavera and Officer Merola had seen each other on the same block on Avenue L for several years because Officer Merola frequently visits a relative who resides across the street from Mr. Talavera's house. Mr. Talavera and Officer Merola have seen each other at annual block parties.

22. For nine straight days in early February 2018, Chicago experienced considerable winter storms and accumulations of snow.

23. Every day the snow fell during this period Mr. Talavera and his neighbors on South Avenue L worked diligently to dig their cars out from snow- and ice-covered parking spaces in front of their houses. Mr. Talavera and his neighbors then placed chairs in the spaces to prevent others from parking in their hard-earned spaces.

24. The neighborhood did this so they could get to their jobs and meet their other important commitments.

25. On February 11, 2020, at approximately 6:30 p.m., Mr. Talavera returned in his car to his home on Avenue L and found Officer Merola's vehicle parked in Mr. Talavera's hard-earned parking space.

26. Officer Merola had removed the chairs from the parking space Mr. Talavera had dibs on, and Officer Merola then parked his car in that parking space.

27. Officer Merola knew that Mr. Talavera had dibs on the space he parked in.

28. Officer Merola knew he could park easily in front of his relative's residence across the street since Officer Merola had cleared out the space and claimed dibs on it for his relative and himself.

29. Mr. Talavera's plan to have his car in front of his house to drive to work the next morning was upset and he was angry.

30. Since Mr. Talavera could not park in front of his residence he drove to another area and parked his car there temporarily. However, he could not leave his car there for long.

31. Next, Mr. Talavera walked home and entered his residence.

32. After a while Mr. Talavera saw Officer Merola leaving the house across the street. He then saw Officer Merola walking towards his own vehicle parked in Mr. Talavera's parking space.

33. Mr. Talavera wanted to get outside quickly to speak with Officer Merola.

34. Mr. Talavera certainly wanted to politely express his frustration about his parking space.

35. But Mr. Talavera truly hoped Officer Merola would, at the very least, wait two or three minutes before driving away so Mr. Talavera could retrieve his car from the temporary space and return to park in front of his home — with Officer Merola holding the spot before driving away.

36. Mr. Talavera went outside to ask Officer Merola to hold the space.

37. Politeness was key for Mr. Talavera as he prepared to speak with Officer Merola. He had heard stories of some police officers responding negatively to civilians they perceive as being rude or disrespectful.

38. Mr. Talavera approached Officer Merola in the street and asked why he parked in Mr. Talavera's parking space.

39. Officer Merola responded in rage and pushed Mr. Talavera forcefully. Mr. Talavera was able to stay on his feet.

6

40. Mr. Talavera questioned Officer Merola and accused him of abusing his office as a police officer.

41. Officer Merola pushed Mr. Talavera again.

42. Officer Merola punched Mr. Talavera in the face, causing injuries.

43. Officer Merola conducted an emergency takedown procedure, a policing technique, which brought Mr. Talavera to the concrete forcefully, breaking Mr. Talavera's ankle and causing other injuries.

44. Officer Merola got on top of Mr. Talavera and pinned him to the street.

45. Officer Merola proceeded to punch Mr. Talavera in his face and head many times, causing injuries.

46. Officer Merola broke a bone in his own hand during one of these punches.

47. Officer Merola told Mr. Talavera he was under arrest; that he was going to jail; to place his hands behind his back; and to stop resisting arrest.

Officers Boyle and Zeiger Join in the False Arrest

48. Officers Boyle and Zeiger arrived at the scene in their police vehicles.

49. Officers Boyle and Zeiger immediately observed Officer Merola on top of, and in control of, Mr. Talavera.

50. Officer Merola identified himself to Officers Boyle and Zeiger as a Chicago Police Officer.

51. Officer Merola told Officers Boyle and Zeiger he (Officer Merola) was arresting Mr. Talavera for assaulting Officer Merola.

52. Despite being obvious to everyone at the scene, including witnesses, that it was Officer Merola who assaulted Mr. Talavera, Officers Boyle and Zeiger joined Officer Merola and falsely arrested Mr. Talavera. They did so knowing the following:

    a. Witnesses present stated Officer Merola initiated the fight with Mr. Talavera. Officers Merola, Boyle and Zeiger failed to interview all available, credible witnesses.

    b. Officer Merola is larger, stronger and heavier than Mr. Talavera.

    c. There were obvious injuries to Mr. Talavera's face and eyes.

    d. Officer Merola advised his only injury was to a finger. It was obvious the finger was hurt while punching Mr. Talavera's head and face with his fists.

53. Officers Boyle and Zeiger adopted Officer Merola's lies in their entirety — and in direct contradiction to the evidence and witness statements available at the scene.

54. Officers Boyle and Zeiger did so pursuant to a code of silence: to cover up for Officer Merola's rage and violence, and to prevent him from receiving a disciplinary investigation into this incident.

55. To implement and advance the code of silence Officer Merola, Officer Boyle and Officer Zeiger invented a series of lies to create a false story that it was Mr. Talavera who attacked Officer Merola. In this false narrative, Officer Merola was an innocent victim of Mr. Talavera's violence.

56. To implement and advance the code of silence Officers Boyle and Zeiger used those lies to form the basis of their arrest reports and statements. Officers Boyle and Zeiger:

    a. turned a blind eye to Officer Merola's misconduct;

    b. helped Officer Merola in cover up his actions;

      c.      hid the truth from their supervisors;

      d.      hid the truth from the Cook County State's Attorney's Office; and

      e.      hid the truth from Mr. Talavera and his defense attorney in the criminal proceedings.

57. Officers Boyle and Zeiger took Mr. Talavera to a Chicago police station where he was detained.

58. Next, Mr. Talavera was taken by Chicago police to a hospital, where he was detained during treatment of injuries Mr. Talavera suffered in the beating.

59. Mr. Talavera was taken back to the Chicago Police station where he was detained overnight.

60. One year after the false arrest, after incurring a range of hardships, justice prevailed and Mr. Talavera was found not guilty at trial in the Circuit Court of Cook County,

61. The Defendants' actions against Mr. Talavera caused him physical and emotional injuries, pain and suffering, medical treatment and bills, constitutional violations, loss of liberty, lost wages, other economic losses, other burdens and expenses.

62. Mr. Talavera brings this suit to seek redress for the wrongs the Defendant Officers committed against him.

<u>COUNT I</u>
<u>42 U.S.C. § 1983 FALSE ARREST, UNLAWFUL SEARCH & SEIZURE</u>
<u>AGAINST OFFICERS MEROLA, BOYLE AND ZEIGER</u>

63. The Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 62.

64. Defendant Officers did not have probable cause to search and seize the Plaintiff.

65. Defendant Officers did not have probable cause to arrest the Plaintiff.

66.   The actions of the Defendant Officers violated the Plaintiff's Fourth Amendment Rights and were in violation of said rights protected by 42 U.S.C. §1983.

67.   The Plaintiff suffered damages.

WHEREFORE, the Plaintiff, Anthony Talavera, prays for judgment against Officers Merola, Boyle and Zeiger for compensatory damages, punitive damages, the costs of this action, attorney's fees pursuant to 42 U.S.C. §1988, and such other and additional relief as this Court deems equitable and just.

## COUNT II
## 42 U.S.C. § 1983 CONSPIRACY
## AGAINST OFFICERS MEROLA, BOYLE AND ZEIGER

68.   The Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 62.

69.   Defendant Officers conspired and agreed to use their police powers in an unlawful manner to falsely arrest the Plaintiff.

70.   Defendant Officers committed overt acts in furtherance of this conspiracy, which included fabricating evidence, providing false information in sworn reports, signing false criminal complaints, and providing perjured and false testimony in criminal proceedings against the interests of Mr. Talavera.

71.   The actions of Defendant Officers were committed intentionally, with malice, willfulness, wantonness and reckless indifference to the rights of the Plaintiff.

72.   The Plaintiff suffered damages.

WHEREFORE, the Plaintiff, Anthony Talavera, prays for judgment against Officers Merola, Boyle and Zeiger for compensatory damages, punitive damages, the costs of this action,

attorney's fees pursuant to 42 U.S.C. §1988, and such other and additional relief as this Court deems equitable and just.

## COUNT III
## 42 U.S.C. § 1983 DUE PROCESS VIOLATIONS
## AGAINST OFFICERS MEROLA, BOYLE AND ZEIGER

73. The Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 62.

74. Defendant Officers, while acting as investigators, individually, jointly, and in conspiracy with each other, deprived Plaintiff of his constitutional right to due process.

75. Defendant Officers deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, as well as knowingly fabricated false evidence, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

76. Defendants' misconduct directly resulted in the detention of Plaintiff and in the start of and continuation of unjust criminal proceeding against Plaintiff, denying him of his constitutional right to due process under the Fourteenth Amendment. Absent Defendants' misconduct, the prosecution of Plaintiff could not and would not have been pursued.

77. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless and deliberate indifference to the rights of others, and in total disregard of the truth and of Plaintiff's innocence.

78. The Plaintiff suffered damages.

WHEREFORE, the Plaintiff, Anthony Talavera, prays for judgment against Officers Merola, Boyle and Zeiger for compensatory damages, punitive damages, the costs of this action, attorney's fees pursuant to 42 U.S.C. §1988, and such other and additional relief as this Court deems equitable and just.

## COUNT IV
## 42 U.S.C. § 1983 EXCESSIVE FORCE
## AGAINST OFFICER MEROLA

79. The Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 62.

80. The force used by Officer Merola against the Plaintiff constituted excessive force in violation of the Plaintiff's Fourth Amendment Rights of the U.S. Constitution and 42 U.S.C. §1983.

81. The force used by Officer Merola against the Plaintiff was objectively unreasonable and excessive, and was undertaken intentionally, with malice, and with reckless indifference to the Plaintiff's constitutional rights.

82. As a direct and proximate consequence result of Officer Merola's unjustified and excessive use of force, the Plaintiff suffered injuries including, but not limited to, physical injuries, pain and suffering, emotional anguish, and monetary loss and expenses.

WHEREFORE, the Plaintiff, Anthony Talavera, prays for judgment against Officer Merola for compensatory damages, punitive damages, the costs of this action, attorney's fees pursuant to 42 U.S.C. §1988, and such other and additional relief as this Court deems equitable and just.

## COUNT V
## *MONELL* CLAIMS AGAINST
## CITY OF CHICAGO

83. The Plaintiff re-alleges and incorporates herein the allegations of paragraphs 1 through 62.

84. The Plaintiff suffered violations of his Fourth Amendment right to be free from unreasonable search and seizure pursuant to *Monell*[1] and its progeny.

85. The City maintains unconstitutional police policies.

86. The City's unconstitutional police policies caused Plaintiff's injuries.

87. Plaintiff's allegations against the City for *Monell* violations are consistent with the 2016 report in which the U.S. Department of Justice stated that the civil rights of Chicagoans have been routinely violated by officers of the Chicago Police Department for many years.

88. Plaintiff's allegations against the City for *Monell* violations are consistent with the then-mayor of Chicago having conceded in 2015 that a code of silence exists within the Chicago Police Department that results in the failure to report police misconduct.

89. This code of silence resulting in the inappropriate and insufficient supervision of officers, and in the inability to uncover and discipline wrongdoers.

90. Specific City officials had actual or constructive knowledge of the unconstitutional police policies detailed in this complaint.

91. The City's constitutional violations are evidenced by widespread practice constituting a "custom or usage;" and by a failure to supervise or discipline its officers.

92. The widespread practices of constitutional violations are not written or formally adopted, but is a pervasive, longstanding practice that has the force of law.

---

[1] *Monell v. Department of Soc. Svcs.*, 436 U.S. 658 (1978)

93. The City is liable for the widespread practice within its police department of:

   a. Officers falsifying arrest reports;

   b. Officers falsifying testimony;

   c. Officers covering up for fellow officers' misconduct by falsifying reports and testimony;

   d. Arresting innocent people; and,

   e. Maliciously prosecuting innocent people;

94. The City is liable for the widespread practice within its police department of a code of silence whereby police officers are reluctant to report (and turn a blind eye to) another officer's bad conduct to superiors, even in the midst of serious criminal wrongdoing. This code of silence results in the inappropriate and insufficient supervision of officers, and in the inability to uncover and discipline wrongdoers; and

95. The City is liable for its failure, within its police department, to supervise or discipline its officers.

96. The City's failure to supervise or discipline its officers violates the constitutional rights of individuals, including the Plaintiff.

97. The City fails to supervise or discipline its officers when they:

   a. Falsify arrest reports;

   b. Falsify testimony;

   c. Cover up for fellow officers' misconduct in other ways;

   d. Arrest innocent people; and,

   e. Maliciously prosecute innocent people;

98. Officers Merola, Boyle and Zeiger undertook a wide range of acts and omissions

that were or should have been detected by their colleagues and their superiors.

99. The City's failure to supervise and discipline demonstrates a deliberate indifference to the Plaintiff's rights and the rights of citizens generally.

100. As a result of these and other failures by the City, the Plaintiff suffered damages.

WHEREFORE, the Plaintiff, Anthony Talavera, pray for judgment against City of Chicago, for all available damages, attorneys' fees, and costs of this action, attorney's fees pursuant to 42 U.S.C. §1988, and such other and additional relief as this Court deems equitable and just.

## COUNT VI
## ILLINOIS LAW CLAIM - INDEMNIFICATION
## AGAINST CITY OF CHICAGO

101. The Plaintiff re-allege and incorporate herein the allegations of paragraphs 1 through 62.

102. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

103. At all times relevant to this incident, Defendants, Officer Merola, Officer Boyle and Officer Zeiger were employees of the City of Chicago, and they acted within the scope of their employment in committing the misconduct described herein.

WHEREFORE, the Plaintiff pray that should this Court enter judgment in their favor and against Officers Merola, Boyle and Zeiger, the City of Chicago will be ordered to pay the Plaintiff any judgment for compensatory damages obtained against those Defendants.

JURY DEMAND

Plaintiff prays for trial by jury.

                                                          Respectfully submitted,

                                                          ANTHONY TALAVERA


                                                          <u>/s/ David S. Lipschultz</u>
                                                          David S. Lipschultz

David S. Lipschultz
Law Offices of David S. Lipschultz, Inc.
200 S. Michigan Avenue, Suite 201
Chicago, Illinois 60604
Telephone: 312-414-1778
Fax: 312-414-1887
Email: david@dsllawoffice.com